SCANNED

MAR 05 2020 v

U.S. DISTRICT COURT ST. PAUL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal File No. _20- 55 SRN_ |
| | ) | |
| Plaintiff, | ) | **INFORMATION** |
| | ) | |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 26 U.S.C. § 7206(1) |
| PETER EARL DAHL, | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

## Background

1.     Crown Bank ("Crown") is a bank located in the State of Minnesota whose deposits were, at all times relevant, insured by the Federal Deposit Insurance Corporation ("FDIC").  From approximately June 2000 until May 2017, DAHL was chief executive officer of Crown.

2.     Beginning in approximately 2012 and continuing until 2017, DAHL engaged in a scheme to defraud Crown Bank and several individuals.  As part of the scheme, DAHL repeatedly conducted transactions involving funds and credits of Crown for his own purposes and without permission of the bank's board or shareholders and without notice to or approval of state and federal regulatory agencies.  DAHL used various Crown accounts to cover his personal debts and expenditures and repeatedly kited obligations within accounts of Crown and between accounts at Crown and other banks.  DAHL used his position at Crown and access to accounts at Crown to avoid paying creditors to whom he owed substantial sums.  In connection with many such transactions, DAHL understood that records would be created at Crown.  On many occasions DAHL made and caused to be

made false entries in Crown's records, either because records were created in accounts that did not legitimately belong to DAHL yet he used the accounts as though the funds did belong to him, or because a false entry had to be made in a record to cause funds to be released for the benefit of DAHL.

3.      As further part of the scheme, DAHL defrauded prospective investors in Crown's holding company, Crown Bankshares. To entice investors to buy shares in the holding company, DAHL knowingly made misrepresentations of material fact and concealed material facts from investors. For example, in March 2007 and later, Dahl represented to prospective investors that a merger with or acquisition by another certain bank was "imminent," and that he was negotiating with said bank to purchase Crown. Dahl specified a per-share premium of 25% to be received by investors and that he would remain with the surviving entity in a controlling management capacity, all of which was material to the investors. However, in truth and in fact, no merger with the bank in question was likely. The contact, which occurred in late January and/or early February, 2017, had been preliminary and introductory. Details, including but not limited to specific prices and an expected per-share premium, were never discussed, and in February 2017, the bank had informed Dahl that it was not interested in acquiring or merging with Crown. It was known within Crown as early as February 2017 that there would be no merger with the certain bank which Dahl had described to investors.

4.      Moreover, during this same time, DAHL knew that Crown and he personally were under scrutiny by the FDIC. Although he knew of his own misconduct relating to Crown's accounts described above and that the FDIC investigation could lead to regulatory

2

action – including possible limitations on his ability to engage in banking or otherwise conduct business at Crown – and impair his reputation in the banking community, DAHL did not disclose this material information when telling investors that he would remain in his position within the new entity. The investors relied on DAHL's misrepresentations and would have wanted to know the truth about DAHL's representations before deciding whether to invest.

5.      As further part of the scheme to defraud, DAHL arranged loans from individuals ostensibly to third parties, without the third parties' knowledge and with the funds going to DAHL. DAHL did not disclose this income on his tax returns.

## COUNT 1
## (Wire Fraud)

6.      Paragraphs 1-5 are hereby re-alleged as if set forth fully herein.

7.      On or about May 31, 2017, in the State and District of Minnesota and elsewhere, the defendant,

## PETER EARL DAHL,

having devised the scheme and artifice to defraud described above, did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate commerce, writings for the purpose of executing such scheme and artifice, that is, DAHL sent an email to investor P.H. which falsely stated, "there is a strong likelihood of selling the bank."

8.      All in violation of Title 18, United States Code, Section 1343.

## COUNT 2
### (False Income Tax Return)

9.      Paragraphs 1-5 are hereby re-alleged as if set forth fully herein.

10.      During 2016 DAHL obtained taxable income of approximately $720,000 from transactions designed to look like loans or stock purchases, but with the funds going to Dahl, as described above.  DAHL failed to disclose the income on his 2016 individual income tax return, IRS form 1040, resulting in a tax loss of approximately $285,200.

11.      On or about October 4, 2017, in the State and District of Minnesota and elsewhere, the defendant,

**PETER EARL DAHL,**

knowingly and willfully caused the filing of his 2016 Form 1040 federal income tax return with the Internal Revenue Service, which was signed under penalty of perjury and which was false and fraudulent as to a material matter in that the defendant reported on line 21 of said return that his other income was $24,840, whereas, as the defendant then and there knew, the correct figure was at least $744,840.

12.      All in violation of Title 26, United States Code, Section 7206(1).

U.S. v. Peter Earl Dahl

## FORFEITURE ALLEGATIONS

As the result of the offense alleged in Count 1 of this Information, the defendant,

### PETER EARL DAHL,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds the person obtained directly or indirectly as a result of such violation, including, but not limited to, a money judgment in the amount of at least $195,000 and not more than $1,820,000.

As the result of the offense alleged in Count 1 of this Information, the defendant,

### PETER EARL DAHL,

shall forfeit to the United States, as a substitute asset in partial satisfaction of the money judgment forfeiture, the $40,000 he transferred to the United States Marshals Service ("USMS") on or about June 13, 2016.

The United States reserves the right to seek forfeiture of additional specific assets and the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

Respectfully submitted,

ERICA H. MACDONALD
United States Attorney

Dated: March 5, 2020

BY: ROBERT M. LEWIS
Assistant U.S. Attorney
Attorney ID No. 249488