UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 20-55 (SRN)

UNITED STATES OF AMERICA,    )
                             )
              Plaintiff,     )
                             )
    v.                       )     PLEA AGREEMENT AND
                             )     SENTENCING STIPULATIONS
PETER EARL DAHL,             )
                             )
              Defendant.     )

The parties to this case hereby agree to its resolution on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other government agency. The United States is represented by Erica H. MacDonald, United States Attorney for the District of Minnesota, and Robert M. Lewis, Assistant United States Attorney. The defendant, PETER EARL DAHL ("DAHL" or "the defendant" herein), is represented by Paul C. Engh, Esq.

1.    **Charges.** The defendant agrees to plead guilty to Counts 1 and 2 of the Information, which charge the defendant with wire fraud in violation of 18 U.S.C. § 1343 and filing a false income tax return in violation of 26 U.S.C. § 7206(1). The defendant is pleading guilty to these charges because he is guilty of the charges.

2.    **Factual Basis.** The defendant agrees that the following facts are true and correct and would be proven at trial beyond a reasonable doubt:

> Crown Bank ("Crown") is a bank located in the State of Minnesota whose deposits were, at all times relevant, insured by the Federal Deposit Insurance Corporation ("FDIC"). From approximately June 2000 until May 2017, DAHL was chief executive officer of Crown.

SCANNED

JUL 21 2020

U.S. DISTRICT COURT ST. PAUL

Beginning in approximately 2012 and continuing until 2017, DAHL engaged in a scheme to defraud Crown Bank and several individuals. As part of the scheme, DAHL repeatedly conducted transactions involving funds and credits of Crown for his own purposes and without permission of the bank's board or shareholders and without notice to or approval of state and federal regulatory agencies. DAHL used various Crown accounts to cover his personal debts and expenditures and repeatedly kited obligations within accounts of Crown and between accounts at Crown and other banks. DAHL used his position at Crown and access to accounts at Crown to avoid paying creditors to whom he owed substantial sums. In connection with many such transactions, DAHL understood that records would be created at Crown. On many occasions DAHL made and caused to be made false entries in Crown's records, either because records were created in accounts that did not legitimately belong to DAHL yet he used the accounts as though the funds did belong to him, or because a false entry had to be made in a record to cause funds to be released for the benefit of DAHL.

As further part of the scheme, DAHL defrauded prospective investors in Crown's holding company, Crown Bankshares. To entice investors to buy shares in the holding company, DAHL knowingly made misrepresentations of material fact and concealed material facts from investors. For example, in March 2017 and later, Dahl represented to prospective investors that a merger with or acquisition by Deerwood Bank was "imminent," and that he was negotiating with Deerwood Bank to purchase Crown. Dahl specified a per-share premium of 25% to be received by investors and that he would remain with the surviving entity in a controlling management capacity, all of which was material to the investors. However, in truth and in fact, no merger with Deerwood Bank was likely. The contact with Deerwood, which occurred in late January and/or early February, 2017, had been preliminary and introductory. Details, including but not limited to specific prices and an expected per-share premium, were never discussed, and in February 2017, Deerwood Bank had informed Dahl that Deerwood was not interested in acquiring or merging with Crown. It was known within Crown as early as February 2017 that there would be no merger with Deerwood Bank.

Moreover, during this same time, DAHL knew that Crown and he personally were under scrutiny by the Federal Deposit Insurance Corporation ("FDIC"). Although he knew of his own misconduct relating to Crown's accounts described above and that the FDIC investigation could lead to regulatory action – including possible limitations on his ability to engage in banking or otherwise conduct business at Crown – and impair his reputation in the banking community, DAHL did not disclose this material information when telling investors that he would remain in his position within the new entity.

2

The investors relied on DAHL's misrepresentations and would have wanted to know the truth about DAHL's representations before deciding whether to invest. In total, investments by persons whom DAHL solicited totaled at least $1,820,000. After suing Crown, Crown compensated the investors for a portion of their losses.

On or about May 31, 2017, in the State and District of Minnesota and elsewhere, the defendant,

## PETER EARL DAHL,

having devised the scheme and artifice to defraud described above, did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate commerce, writings for the purpose of executing such scheme and artifice, that is, DAHL sent an email to investor P.H. which falsely stated, "there is a strong likelihood of selling the bank," all in violation of Title 18, United States Code, Section 1343.

As further part of the scheme to defraud, DAHL arranged loans from individuals ostensibly to third parties, without the third parties' knowledge and with the funds going to DAHL, which funds were not repaid. DAHL forged the signatures of at least two bank customers to obtain such loans for his personal use. During 2016 DAHL obtained taxable income from transactions designed to look like loans or stock purchases, but with the funds going to Dahl. Specifically,

1.    On or about February 22, 2016, DAHL arranged for a loan from R.M. ostensibly to J.S. J.S. was unaware of the loan, and DAHL kept the funds;

2.    On or about March 4, 2016 and March 7, 2016, J.W. paid DAHL a total of $200,000 for Crown Bankshares stock that had purportedly been owned by Tom Petters. DAHL accepted the funds but did not provide the shares;

3.    On or about October 28, 2016 and December 7, 2016, DAHL agreed to convey Crown Bankshares stock valued at $280,000 to A.B. in return for cancellation of a $100,000 debt DAHL owed A.B. and payment of $120,000 cash. DAHL received the funds but did not provide the shares; and

4.      On or about November 21, 2016, DAHL arranged for a
        loan from M.P. ostensibly to R.E.  R.E. was unaware of
        the loan, and DAHL kept the funds.

In calendar year 2016, DAHL gained taxable income of
approximately $720,000 in this manner but failed to disclose the income on
his 2016 IRS form 1040, resulting in a tax loss of approximately $285,200.

On or about October 4, 2017, in the State and District of Minnesota
and elsewhere, the defendant,

**PETER EARL DAHL,**

knowingly and willfully caused the filing of his 2016 Form 1040 federal
income tax return with the Internal Revenue Service, which was signed under
penalty of perjury. The return was false and fraudulent as to a material matter
in that the defendant reported on line 21 of said return that his other income
was $24,840, whereas, as the defendant then and there knew, the correct
figure was at least $744,840, all in violation of Title 26, United States Code,
Section 7206(1).

3.      **Statutory Penalties.**  Count 1, wire fraud, carries the following maximum

statutory penalties:

a.      term of imprisonment of up to 30 years (because the offense affected
        a financial institution);

b.      a criminal fine of up to $1,000,000 (because the offense affected a
        financial institution), or twice the amount of gain or loss, whichever
        is greater;

c.      a term of supervised release of up to five years;

d.      mandatory restitution to any victims of the offense; and

e.      a special assessment of $100.00, which is due and payable
        upon sentencing.

Count 2, false income tax return, carries the following maximum statutory penalties:

a.      a term of imprisonment of up to three (3) years;

b.      a criminal fine of up to $250,000.00;

c.      a term of supervised release of up to one (1) year; and

d.      a special assessment of $100.00, due and payable upon sentencing.

4.      **Revocation of Supervised Release.**  The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the maximums set forth in 18 U.S.C. § 3583.

5.      **Guideline Calculations.**  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551 *et seq.*  Nothing in this agreement shall be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the Court will consider the United States Sentencing Guidelines and the statutory factors of 18 U.S.C. § 3553(a) in determining the appropriate sentence and stipulate to the following advisory Guidelines calculations:

a.      The offense level for Count 1 is 19 or 25, as follows:

- The base offense level is seven, U.S.S.G. § 2B1.1(a)(1);
- The parties do not agree on the loss amount for Count 1.  The government contends that the loss includes all funds advanced by the investors for a total of at least $1,820,000, and Dahl asserts that the loss is only the amounts the investors did not recover from Crown in litigation, for a total of approximately $190,500.  Thus, ten levels are added because the loss was at least $150,000, U.S.S.G. § 2B1.1(b)(1)(F), and if the loss includes the funds reimbursed by Crown, sixteen levels are added because the loss was more than $1,550,000, U.S.S.G. § 2B1.1(b)(1)(I); and

- Two levels are added because the defendant abused of a position of trust, U.S.S.G. § 3B1.3.

b.   The tax loss for Count 2 is $285,120 and the offense level is 18, U.S.S.G. §§ 2T1.1, 2T4.1.

c.   Pursuant to U.S.S.G. §§ 3D1.1-3D1.4, the combined offense level for all counts is 19 or 25.

d.   If defendant (1) testifies truthfully during the change of plea and sentencing hearings, (2) pays the $200 special assessment upon sentencing, (3) complies with any conditions of pretrial release, (4) cooperates fully during the presentence report, including any asset investigation, and (5) commits no other acts inconsistent with acceptance of responsibility, including but not limited to committing new crimes or misconduct, the government will recommend that defendant receive at sentencing a three level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a).

e.   The parties agree no other Chapter 2 or Chapter 3 adjustments apply.

f.   Based on the foregoing, the total offense level is 16 or 22.

6.   **Criminal History Category.**   The parties believe that the defendant's Criminal History Category is I.  If the defendant's Criminal History Category as finally computed at the time of sentencing is different than the parties' belief, the parties may not withdraw from the plea agreement.

7.   **Advisory Guidelines Range and Sentencing Advocacy.**   With a total adjusted offense level of 16 and Criminal History Category I, the advisory Sentencing Guideline range is 21-27 months' imprisonment with an advisory fine range of $10,000 to $1,000,000.  With a total adjusted offense level of 22 and Criminal History Category I, the advisory Sentencing Guideline range is 41-51 months' imprisonment with an advisory fine

6

range of $15,000 to $1,000,000. The parties are not bound to request a sentence within the advisory Guidelines and may argue for any sentence available under law, including, but limited to, the defendant may argue that the loss amount in this case overstates the seriousness of the offense.

8. **Discretion of the Court.** The Guideline stipulations, although binding on the parties, are not binding on the Court. The Court has the sole discretion to determine the applicable sentencing factors and the parties understand and agree that, if the Court determines that different sentencing factors or calculations apply to defendant's offense other than those set forth in this agreement, neither party may withdraw from this agreement.

9. **Restitution.** The defendant understands and agrees that an order for restitution is mandatory in this case under 18 U.S.C. § 3663 *et seq.*, and he will be ordered to pay restitution as determined by the Court. The parties agree that the Court should, pursuant to 18 U.S.C. § 3664(j), order that restitution be paid to the individuals who incurred losses and have not been compensated by Crown or another source, including specifically victims P.H. ($75,000), J.S. ($500), M.P. ($60,000), R.E. ($55,000), and any other individual not yet fully compensated for losses as defined under applicable law. The defendant further understands that the Court will order him to pay restitution to Crown for reimbursement payments Crown made to the victims, if the Court determines that such amounts are part of the loss in this case pursuant to U.S.S.G. § 2B1.1(b)(1).

The defendant understands that the parties may agree to an order for restitution pursuant to 18 U.S.C. §§ 3556 and 3663(a)(3) with respect to Count 2, and he hereby agrees

CASE 0:20-cr-00055-SRN   Document 11   Filed 07/21/20   Page 8 of 10

to such an order that he pay restitution to the Internal Revenue Service in the amount of

$285,120.  Pursuant to 18 U.S.C. § 3664(i), the parties agree that restitution be paid to the

United States or the Internal Revenue Service only after all non-government victims have

received restitution in full.  If the Court orders such restitution including but not limited to

imposing a schedule of payments, defendant agrees that the order does not prohibit or limit

the methods by which the IRS may seek civilly to collect any taxes, interest, and/or

penalties due and owing.

The defendant represents that he will fully and completely disclose to the United

States Attorney's Office the existence and location of any assets in which the defendant

has any right, title, or interest which shall include all assets held in defendant's own name

or in the name of another including those held by spouse, nominee or other third party, in

any property, real or personal. The defendant agrees to assist the United States in

identifying, locating, returning, and transferring assets for use in payment of restitution,

forfeiture and fines ordered by the Court.  The defendant agrees to complete a financial

statement fully and truthfully within 30 days after the entry of this Plea Agreement. The

defendant further agrees to execute any releases that may be necessary for the United States

to obtain information concerning the defendant's assets.  The defendant agrees that, at the

discretion of the U.S. Attorney's Office, the defendant will submit to one or more

interviews or depositions under oath regarding financial issues prior to sentencing.

10.     **Forfeiture.**  The defendant agrees to forfeit all property, real or personal,

which constitutes or is derived from the proceeds traceable to the wire fraud scheme

charged in Count 1 of the Information. The defendant consents to the entry of a money

judgment forfeiture of at least $190,500, and the United States reserves the right to seek a higher money judgment forfeiture amount.

The defendant agrees to forfeit to the United States, as a substitute asset in partial satisfaction of the money judgment forfeiture, the $40,000 he transferred to the United States Marshals Service ("USMS") on or about June 13, 2016. To the extent the defendant paid those funds to the USMS toward the purchase of 3,334 shares of Crown Bankshares, Inc. (Stock Certificate No. 1005), the defendant acknowledges that he did not sign the Stock Purchase Agreement relating to the purchase of the stock, and that he did not complete the purchase of those or any other Crown Bankshares, Inc. stock from the United States. The defendant further acknowledges that he has no claim to or interest in the Crown Bankshares stock [Certificate No. 1005] in the custody of the USMS forfeited in connection with proceedings relating to *United States v. Petters et al.,* Crim. No. 08-364 (JRT/AJB). The defendant understands that the 3,334 shares of Crown Bankshares, Inc. will be sold by the USMS to a new buyer, free and clear of any claims by the defendant.

The United States reserves the right to seek forfeiture of additional specific assets and the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

11.   **Waivers.**  The defendant understands that by pleading guilty he waives his right to a trial or appeal on the question of his guilt or innocence and his right to bring pretrial motions. Further, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the

9

Freedom of Information Act and/or the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

12.    **Complete Agreement.** The foregoing provisions set forth the entire plea agreement between the parties and no other agreements or promises have been made.

ERICA H. MACDONALD
United States Attorney

Dated:    7/20/20

BY: ROBERT M. LEWIS
Assistant U.S. Attorney

Dated:    7/20/2020

PETER EARL DAHL
Defendant

Dated:    7/20/2020

PAUL C. ENGH, ESQ.
Attorney for Defendant

10